TOPEKA FLOUR MILLS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7695.   Promulgated May 28, 1928.

*Phil D. Morelock, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

148

[redacted]

## OPINION.

LANSDON: The petitioner contends that the profits, amounting to $20,577.34, derived from operation of the Kramer-Fair mill should not be included as income for the fiscal year ended June 30, 1920, but should be treated as income at the time the litigation was concluded in 1925; and that the expenses of defending the suit to set aside the lease should be subtracted from such profits, leaving a balance of $7,914.83 taxable in 1925.

The respondent contends that the entire amount of $20,577.34 constituted taxable income for the fiscal year ended June 30, 1920.

The parties have entered into and filed a stipulation of the material facts, which constitutes all the evidence submitted in the proceeding. The form of the suit brought "attacking the validity of the lease" and the result thereof is not clearly stated in the stipulation. When read in the light of the pleadings and briefs, however, it seems clear that the suit was one to set aside the lease and that the validity of the lease was sustained by the United States District

Court in a decision rendered in the spring of 1925. The suit was instituted prior to the close of the taxable year and pending the decision of the court petitioner retained all of the profits earned from the operation under the lease, including the agreed rental. In 1925, pursuant to the decision of the court, petitioner paid to the Kramer-Fair Co. the agreed rental and share of the profits with interest from June 30, 1920, to June 15, 1925. The interest so paid is one of the items of expense claimed by petitioner in reduction of taxable income.

The question presented in this proceeding is whether petitioner realized income in the amount of its share of the profits under the lease in the taxable year or whether such income, if any, was received after the litigation was concluded in 1925.

The lease agreement between petitioner and the Kramer-Fair Co. was entered into on July 21, 1919. . The petitioner operated the leased property for more than six months before there was any allegation that the lease was invalid. Profits were earned from such operation and taken by petitioner into its assets along with earnings from other operations. Then there arose the possibility that the lease might be held invalid.

The petitioner continued operations, however, until the expiration of the lease, at which time it had in its possession all the profits earned from such operation. The provisions of the lease had been carried out by petitioner and the profits earned thereunder belonged to it unless and until the lease was held to have been invalid. The mere filing of suit did not prevent petitioner from the immediate use and enjoyment of its share of profits. There was the possibility, of course, that the lease might be later held invalid, which, however, was not the result of the litigation. Is it to be said that because of such a possibility petitioner did not in the taxable year receive its share of earnings under the lease? Must all such doubts be determined before the amount constitutes income to petitioner? We do not think so.

In *Percy K. Hexter* v. *Commissioner*, 8 B. T. A. 888, a corporation issued shares of stock in part payment for services rendered under a contract which provided that if the party to whom the stock was issued ceased to be employed by the corporation through no fault of his own then the stock was to become his absolutely. The party was discharged without fault of his own and in proceedings by the corporation to recover the stock a decision was rendered adverse to the corporation. The Board held that the stock was income prior to the year in which the final court decision was rendered. In its opinion the Board stated:

Prior to 1920 the petitioner had the stock. It became his absolutely under the terms of the contract when the company discharged him without any fault on his part. There was a contingency that the court would hold that he was not

**150**

entitled to it, but this contingency never happened. On the other hand, the court held it was rightly his when the company, without fault on his part, discharged him. The stock belonged to the petitioner prior to 1920.

We are of the opinion that the amount of $20,577.34 should be included as income for the fiscal year ended June 30, 1920.

The expense items which are claimed in reduction of the profits realized were all incurred and paid subsequent to June 30, 1920. Obviously they do not constitute proper deductions from income for the fiscal year ended June 30, 1920.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*